# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

In re

ANGEL FIRE CORPORATION (THE) and
ANGEL FIRE SKI CORPORATION,

             Debtors.

Lead Bankruptcy Case No.
93-12176-3a11

_____

TRUETT L. SCARBOROUGH,

             Plaintiff,

v.

Adversary No. 11-1110-s

ANGEL FIRE RESORT OPERATIONS, LLC,
a New Mexico Limited Liability Company;
ASSOCIATION OF ANGEL FIRE
PROPERTY OWNERS, INC., a New Mexico
Nonprofit Corporation,

             Defendants.

USDC Appeal Case No.
12-CV-01256-MCA-WPL

_____

TRUETT L. SCARBOROUGH,

             Appellant,

v.

ANGEL FIRE RESORT OPERATIONS, LLC,
a New Mexico Limited Liability Company;
ASSOCIATION OF ANGEL FIRE
PROPERTY OWNERS, INC., a New Mexico
Nonprofit Corporation,

             Appellees.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

At issue here is, in essence, a real property dispute. Truett L. Scarborough owns several lots of land in or near the ski resort village of Angel Fire, New Mexico, and Angel Fire Resort Operations, LLC ("AFRO") has attempted to assess dues on these lots pursuant to a negative easement filed in the real property records of Colfax County, New Mexico. Scarborough filed this declaratory action against AFRO and the Association of Angel Fire Property Owners, Inc. ("AAFPO"), seeking interpretation of the negative easement and a determination that it does not apply to the properties in question. However, because the negative easement was devised as part of a bankruptcy proceeding, Scarborough brought the action in the United States Bankruptcy Court for the District of New Mexico.

After a flurry of motions and briefing, the bankruptcy court granted AFRO's motion to dismiss Scarborough's amended complaint, finding that it did not have subject matter jurisdiction over the action. *See Scarborough v. Angel Fire Resort Operations, LLC (In re Angel Fire Corp.)*, Bankr. No. 11-93-12176-SS, Adversary No. 11-1110-S, 2012 WL 5880675, at *11 (Bankr. D.N.M. Nov. 20, 2012) (unpublished). Scarborough appealed, electing to have the matter heard by this Court instead of the Bankruptcy Appellate Panel ("B.A.P.") in accordance with 28 U.S.C. § 158(c)(1) and Federal Rule of Bankruptcy Procedure 8001(e). (*See* Doc. 1 Ex. 3.)

Pursuant to 28 U.S.C. § 636(b), this matter has been referred to me to make findings of fact, conduct legal analysis, and recommend a final disposition. (Doc. 42.) Having considered the record before me, the parties' submissions, and the relevant law, and otherwise being fully advised in the matter, I recommend that the decision of the bankruptcy court be affirmed.

**FACTUAL AND PROCEDURAL BACKGROUND**

The case below ("the Scarborough proceeding") was putatively brought in the bankruptcy court as an adversary proceeding within the lead bankruptcy case *In re Angel Fire Corporation* ("the Lead Bankruptcy"). However, other relevant adversary proceedings have also attached to the Lead Bankruptcy in the past, including *Angel Fire Property Owners' Committee v. Angel Fire Corporation*, Adversary No. 93-01392-R ("the POC proceeding"), and *Angel Fire Resort Operations, LLC v. Pierce*, Adversary No. 03-01192-S ("*Pierce*"). Significant portions of the Lead Bankruptcy and the adversary proceedings, including the entire record of the Scarborough proceeding, have been reproduced on the docket for appeal. For ease of review, citations to any document within the record will reflect the document's current location on this Court's docket.

## I.     Bankruptcy and the POC Proceeding

Angel Fire Resort is a real estate development in Colfax County. (Doc. 14 at 24.) As of 1993, Angel Fire Resort consisted of a ski area, a hotel, a golf course and club house, various other recreational areas, and several thousand subdivided residential lots. (*Id.*) The residential lot owners in the development paid dues allowing them access to the recreational facilities, referred to by the parties in the Lead Bankruptcy as "amenities." (*Id.*) Aside from the hotel, all undeveloped property and amenities were owned by either Angel Fire Corporation or its wholly owned subsidiary Angel Fire Ski Corporation (collectively "the Debtors"). (*Id.*)

Also as of 1993, Scarborough was the owner of Lot 3 of Monte Verde "V" Subdivision Unit 1, located on or near the Angel Fire Resort development. (Doc. 2 at 32, 36.)[1] Scarborough

---

[1] The official location of the Monte Verde "V" Subdivision Unit 1 appears to be in dispute; Scarborough maintains that the lots in this subdivision unit are not part of the Angel Fire community. (*See* Doc. 5 at 50.)

claims that the deed to Lot 3 passed to him in 1969 free and clear of any recorded or written covenants. (*Id.* at 36.)

On or around July 9, 1993, the Debtors filed a Chapter 11 bankruptcy petition. (*See id.* at 63.) Several months later, the United States Trustee appointed a Property Owners' Committee ("POC") consisting of residential lot owners pursuant to 11 U.S.C. § 1102(a), which governs unsecured creditors' committees. (Doc. 12 at 10.) In December 1993, the POC brought an adversary complaint for declaratory judgment (Doc. 15 at 21) seeking to preserve the residential property owners' rights to use of the amenities, to ensure that their dues were used to preserve and maintain those amenities, and to ensure that certain infrastructure improvements were completed (*see* Doc. 14 at 25). AFRO and AAFPO contend that Scarborough was a creditor or other party whose interests were represented by the POC (Doc. 45 at 9), basing this assertion on the fact that Scarborough's name appears on a mailing label matrix provided by the POC (Doc. 21 at 28; *see also* Doc. 19 at 6 (describing the origins of the matrix)). Scarborough disputes the claim that he was a creditor, stating that he was at most an "interested person." (Doc. 2 at 33.)

Several parties jointly filed an Amended Joint Plan of Reorganization ("the Plan") in the Lead Bankruptcy on April 20, 1995. (Doc. 13 at 1.) As part of the Plan, an entity known as Angel Projects I, the predecessor in interest to AFRO, agreed to purchase certain assets and liabilities from the bankruptcy estate, including real property interests in the amenities. (*Id.*) In particular, Paragraph 4.16 of the Plan required Angel Projects I to execute and record a negative easement. (*Id.* at 21.) The negative easement in question, entitled "Supplemental Declaration of Restrictive Covenants and Easements" ("the Supplemental Declaration"), was attached as an exhibit to the Plan. (*Id.* at 78-91; *see also id.* at 92-100 (exhibits to the Supplemental Declaration).) The Plan and Supplemental Declaration contain provisions discussing annual

assessments on property owners, the use of amenities by property owners, and capital improvements to amenities, among other things. (*Id.* at 21-29, 78-91.) By the Supplemental Declaration's express terms, the negative easement created by that document constitutes a covenant running with the land. (*Id. passim*.) Finally, the Plan also provides that the bankruptcy court would retain jurisdiction over proceedings arising "under Title 11 . . . or arising in or related to the Reorganization Cases," including "controversies, suits, and disputes between [Angel Projects I] and any creditor that may arise in connection with the interpretation or enforcement of this plan." (*Id.* at 41-42.)

The bankruptcy court confirmed the Plan on May 31, 1995. (Doc. 14 at 1-22.) The POC proceeding was thereafter dismissed for want of case or controversy. (*See* Doc. 38 at 34-35.) Although several parties to the POC proceeding disputed this dismissal for several months afterwards, the parties eventually settled that dispute "pursuant to the amended joint plan of reorganization and documents incorporated therein by reference," and the matter was dismissed in full. (Doc. 39 at 141, 151.)

## II.    Post-Confirmation Developments

Subsequent to confirmation of the Plan, Angel Projects I, AAFPO (the development's homeowners' association), and the POC signed the Supplemental Declaration, and that document and the Plan were recorded in the real property records of Colfax County. *See Home & Land Owners, Inc. v. Angel Fire Resort Operations, L.L.C.*, 69 P.3d 243, 246 (N.M. Ct. App. 2003). Meanwhile, the sale of assets pursuant to the Plan continued, closing in September 1995. (*See* Doc. 2 at 63.) Although most secured creditors were paid at that point, the Lead Bankruptcy remained open for several years, during which time administrative claims and claim objections were resolved. (*See id.*) The bankruptcy court entered a Final Decree, including a provision

5

retaining jurisdiction to enforce previous orders and judgments, on May 14, 2001, at which time both the Debtors' estate and the Lead Bankruptcy itself were closed. (Doc. 14 at 40-41.)

Years passed. Over time, several additional lawsuits with some connection to the Lead Bankruptcy would arise. In one state court action, an association of property owners filed suit against AFRO and AAFPO alleging that the defendants had violated the Supplemental Declaration by modifying the amenities structure for certain property owners. *Home & Land Owners, Inc.*, 69 P.3d at 246. Although the New Mexico Court of Appeals interpreted the Plan and the Supplemental Declaration in determining that the documents did not merge, *id.* at 248, that decision did not itself reopen or directly affect the Lead Bankruptcy. In another action, a putative adversary proceeding brought by AFRO within the Lead Bankruptcy seeking interpretation of the Plan and Supplemental Declaration, the bankruptcy court remanded the matter to state court, concluding that it did not possess subject matter jurisdiction over the parties' claims. (Doc. 15 at 46-53.)[2]

In July 2007, Scarborough purchased Lot 4 of Monte Verde "V" Subdivision Unit 1. (Doc. 2 at 36.) Two years later, Scarborough purchased Lot 2 of the same subdivision unit. (*Id.*) Scarborough states that there were no recorded or written covenants binding the lots' previous purchasers to any annual assessments payable to AAFPO's predecessor in interest. (*Id.*) However, after Scarborough purchased Lots 2 and 4, AFRO began sending statements to Scarborough for annual assessments against these two lots. (*Id.* at 37.) When the assessments were not paid in full, AFRO started sending demand letters and foreclosure threats to Scarborough. (*Id.*)

---

[2] Although the claims and procedural history in *Pierce* are somewhat more complicated than this brief discussion might suggest, I do not need to delve into the details for purposes of this analysis.

### III.     The Scarborough Proceeding

On August 2, 2011, Scarborough filed the amended complaint in the adversary case below, "seeking a declaratory judgment clarifying the legal scope and effect" of the Plan. (*Id.* at 32.) Specifically, Scarborough seeks to determine "whether AFRO has the right to collect an annual assessment where failure to pay is subject to the foreclosure" of his three lots in Monte Verde "V" Subdivision Unit 1. (*Id.* at 35.) Although AFRO asserts, and Scarborough does not dispute, that it was only collecting annual assessments on Lots 2 and 4 (Doc. 45 at 9), Scarborough insists that AFRO's actions with respect to those lots foreshadow its intent to impose dues on Lot 3 as well (Doc. 47 at 13-14.)

AFRO subsequently filed a motion to dismiss and supporting memorandum (Doc. 2 at 60-74), and AAFPO filed a motion for summary judgment on the same day (Doc. 3 at 46-54). Although each Defendant purported to seek different relief, both parties premised their motions on the assertion that the bankruptcy court lacked subject matter jurisdiction over the dispute. (*See* Doc. 3 at 61.) Defendants specifically argued that the dispute does not depend on bankruptcy laws and could proceed in another court, and that the distribution of assets and administration of the estate would not be affected by the action since the estate is closed. (Doc. 2 at 66-73; Doc. 3 at 50-52.) Scarborough, in turn, contended in his response to the motions that bankruptcy jurisdiction exists because his dispute "would not have arisen but for the underlying bankruptcy and the POC Adversary Proceeding." (Doc. 4 at 8.) Alternatively, Scarborough argued that his claims were so intertwined with the Lead Bankruptcy that bankruptcy court jurisdiction must exist, stating that any "peripheral state law issues" do not defeat jurisdiction. (*Id.* at 8-9.) Both Defendants filed a reply (*id.* at 23-26, 33-39), and the bankruptcy court allowed for the filing of a surreply (Doc. 5 at 43-78) and a sur-surreply (Doc. 10 at 33-37).

On November 20, 2012, the bankruptcy court dismissed the case below for want of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *In re Angel Fire Corp.*, 2012 WL 5880675, at *11. The court, concluding that AFRO's motion to dismiss constituted a facial attack on Scarborough's amended complaint, limited its review to the complaint itself, the court's own files, and published New Mexico state court opinions. *Id.* at *10. Based on these documents, the court held that Scarborough's complaint did not arise under bankruptcy law or arise in a bankruptcy case, that there was no bankruptcy estate or case remaining, and that the dispute thus could not impact the estate or case administration. *Id.* at *10-11. Consequently, AFRO's motion was granted, the case was dismissed, and AAFPO's motion for summary judgment was denied as moot. (Doc. 10 at 63-68.)[3]

## IV.   The Instant Appeal

Scarborough appeals the dismissal to this Court, asserting seven errors in the opinion below. (Doc. 43.) The first claim of error centers on the bankruptcy court's choice to interpret AFRO's motion to dismiss as a facial attack on the bankruptcy court's subject matter jurisdiction rather than as a factual attack or a motion for summary judgment. (*Id.* at 24-25.) The next six claims of error revolve around the key question of whether subject matter jurisdiction existed over Scarborough's dispute. (*Id.* at 25-31.) Finally, Scarborough contends that the bankruptcy court erred in advancing language on claim preclusion principles in dicta. (*See id.* at 31-33.)

AFRO filed a response, which AAFPO joined and adopted. (Doc. 45 (AFRO's response); *see also* Doc. 46 (AAFPO's adoption of AFRO's response).) They argue that bankruptcy court jurisdiction cannot exist over this matter because the Debtors and the estate no longer exist, and

---

[3] AFRO had also filed a motion asking the bankruptcy court to abstain from deciding the case. (Doc. 4 at 103-15.) As with the motion for summary judgment, the bankruptcy court denied this motion as moot after granting the motion to dismiss. (Doc. 10 at 69-71.)

they contend that the other jurisdictional claims made by Scarborough constitute "false issues [that] cannot be used as an independent basis for jurisdiction." (Doc. 45 at 9-17.) They also contend that the bankruptcy court properly interpreted AFRO's motion as a facial attack on jurisdiction (*id.* at 6-8) and that the court's language regarding claim preclusion is irrelevant to the outcome here (*see id.* at 19-20). This response was followed by Scarborough's reply, in which he again asserts that the bankruptcy court possessed jurisdiction over his claims. (Doc. 47.)

## STANDARD OF REVIEW

In reviewing a bankruptcy court decision under 28 U.S.C. § 158(a), the Court reviews the bankruptcy court's legal determinations de novo and its factual findings for clear error. *Jenkins v. Hodes (In re Hodes)*, 402 F.3d 1005, 1008 (10th Cir. 2005). A bankruptcy court's finding of fact is clearly erroneous "if it is without factual support in the record or if, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made." *Houlihan Lokey Howard & Zukin Capital v. Unsecured Creditors' Liquidating Trust (In re Commercial Fin. Servs., Inc.)*, 427 F.3d 804, 810 (10th Cir. 2005) (citation omitted).

## DISCUSSION

In his appellate brief, Scarborough sets forth seven issues that he claims are before the Court. However, the second through sixth issues pertain to the single fulcrum question of whether the bankruptcy court possessed subject matter jurisdiction to consider the claims raised in his amended complaint. (*See* Doc. 43 at 8-9.) For that reason, and for ease of review, I have renumbered the issues raised by Scarborough as follows: (I) whether the bankruptcy court applied the wrong standard of review in failing to treat AFRO's motion to dismiss as a motion for summary judgment; (II) whether the bankruptcy court erred in purportedly discussing the

claim-preclusive effect of a confirmation order in its order to dismiss; and (III) whether the bankruptcy court erred in determining that it lacked subject matter jurisdiction to consider Scarborough's amended complaint.

Although my analysis departs from that employed by the bankruptcy court, I ultimately agree that the bankruptcy court did not possess subject matter jurisdiction over this dispute. I therefore recommend that the decision dismissing Scarborough's action be affirmed.

## I.      Standard of Review for Rule 12(b)(1) Motions

At the outset, Scarborough maintains that the bankruptcy court erroneously made findings of fact beyond those pled in his amended complaint and considered these facts in dismissing this action. (*Id.* at 24-25.) Scarborough argues that because AFRO based its motion to dismiss in part on these facts, its attack on his complaint constitutes a factual challenge to the court's subject matter jurisdiction. (*Id.*) In this case, Scarborough impliedly argues, the bankruptcy court should have treated AFRO's motion to dismiss as a motion for summary judgment, as its alleged factual challenge required resolution of factual disputes between the parties. (*See id.* at 7-8.)

Attacks on a court's subject matter jurisdiction under Rule 12(b)(1) may take two forms. A "facial attack" challenges the sufficiency of the complaint, with all allegations in the complaint accepted as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) (citation omitted). By contrast, a "factual attack" goes beyond the allegations of the complaint, challenging the alleged facts upon which subject matter jurisdiction depends. *Id.* at 1003 (citation omitted). Although a facial attack may not rely on documentary and testimonial evidence, a court considering a factual attack on subject matter jurisdiction may consider such evidence. *See Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d

1285, 1292-93 (10th Cir. 2005). However, when the resolution of jurisdictional facts is intertwined with the merits of the underlying case, a court must convert the Rule 12(b)(1) motion to a Rule 12(b)(6) motion to dismiss for failure to state a claim or a motion for summary judgment. *See Holt*, 46 F.3d at 1003.

There is no indication that the bankruptcy court did not accept the allegations in Scarborough's amended complaint as true. However, as part of its analysis, the bankruptcy court found that the Plan and Supplemental Declaration were filed in Colfax County's real property records, that Angel Projects I was the successor in interest to the bankruptcy trustee, and that Angel Projects I filed a motion for a final decree in the Lead Bankruptcy. (Doc. 43 at 24-25 (citing Doc. 10 at 57-58).) These facts do not contradict anything that Scarborough pled in his complaint, and Scarborough does not appear to dispute the factual findings themselves. However, because Scarborough did not plead these particular facts himself, he challenges the court's decision to consider them while treating AFRO's motion to dismiss as a facial attack on subject matter jurisdiction. (*Id.*)

The facts in question were not raised in affidavits, exhibits, or other documentary or testimonial evidence; rather, they were set forth in state and bankruptcy court documents, of which a bankruptcy court may properly take judicial notice, and the consideration of such facts does not convert an otherwise facial challenge to a factual attack. *See Pac. Coast Fed'n of Fishermen's Ass'n v. U.S. Dep't of Interior*, --- F. Supp. 2d ---, 2013 WL 923407, at *3 (E.D. Cal. Mar. 8, 2013) (unpublished); *Nunn v. Witherell*, No. 12 C 3384, 2012 WL 4338889, at *1 (N.D. Ill. Sept. 20, 2012) (unpublished); *Ace Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 208-09 (S.D. Tex. 2008). By relying solely on the allegations in Scarborough's amended complaint and facts established in judicially noticed court documents, the bankruptcy court

correctly treated AFRO's motion as a facial attack on its jurisdiction. Therefore, the court was not required to resolve any factual disputes in reaching its decision, and conversion to a motion for summary judgment was not necessary or appropriate.

## II.    Claim Preclusion

Scarborough also insists that "the Bankruptcy Court erred in advancing *dicta* that the confirmed plan in the lead bankruptcy was *res judicata*" (Doc. 43 at 9), an affirmative defense that should not be considered when resolving jurisdictional matters (*id.* at 31). By explicitly noting that the bankruptcy court's "res judicata" reference constituted dicta, Scarborough would appear to acknowledge that any reference to claim preclusion[4] principles had no bearing on the court's holding regarding the lack of subject matter jurisdiction. *See* BLACK'S LAW DICTIONARY 1102 (8th ed. 2004) ("obiter dictum" definition). At any rate, the bankruptcy court only once raises the claim-preclusive effect of a confirmation order, indirectly and in passing, when quoting a bankruptcy case out of Iowa to support the unremarkable proposition that a confirmation order is construed as a contract between the parties to a bankruptcy. *In re Angel Fire Corp.*, 2012 WL 5880675, at *7 (citations omitted); *see also* 11 U.S.C. § 1141(a) (providing that a confirmed plan binds the debtor, his creditors, and other relevant parties).

Despite Scarborough's argument to the contrary, the discussion of the effect of plan confirmation on the parties to a bankruptcy case does not amount to an assertion that "the confirmation of the Plan should have a claim preclusive effect" on his claims. (*See* Doc. 47 at 9.) Nothing about the bankruptcy court's statement addresses the merits of Scarborough's claims or the preclusive effect of the Plan on these specific claims; it merely notes how reorganization plans are interpreted as between the parties to a bankruptcy, a matter that is expressly set forth by

---

[4] Though the parties use the term "res judicata," the Tenth Circuit employs the term "claim preclusion" for purposes of clarity. *See Yapp v. Excel*, 186 F.3d 1222, 1226 n.1 (10th Cir. 1999).

statute. Thus, even though Scarborough believes that this brief citation constitutes an "[i]nherent" or "[i]mplicit" ruling that he may not bring his claims in any forum (*see* Doc. 43 at 31), a review of the court's conclusions of law reveals no reliance on claim preclusion principles. Accordingly, I find no error to reverse on this count.

### III.   Subject Matter Jurisdiction

Scarborough asserts that his action for declaratory judgment is limited to the "specific" questions of whether, under the Plan or the Supplemental Declaration, AFRO may collect an annual assessment on the lots he owns in Monte Verde "V" Subdivision Unit 1 and whether failure to pay such assessments subjects these lots to foreclosure proceedings. (Doc. 2 at 35.) Because resolution of his claims would require interpretation of the Plan and Supplemental Declaration, Scarborough insists that bankruptcy court jurisdiction must exist over these claims. Scarborough also pleads a number of subsidiary allegations that he says trigger bankruptcy jurisdiction here.

Despite the relatively brief statutory provisions governing the topic, "the jurisdictional framework that applies in bankruptcy cases is frequently confusing and difficult to apply." *In re Thickstun Bros. Equip. Co., Inc.*, 344 B.R. 515, 519 (B.A.P. 6th Cir. 2006); *see also Harstad v. First Am. Bank (In re Harstad)*, 155 B.R. 500, 505 (Bankr. D. Minn. 1993) (describing bankruptcy jurisdiction as "among the most misunderstood and misapplied concepts in the law"). In particular, the standards for bankruptcy court jurisdiction after the confirmation of a reorganization plan have yet to be fully fleshed out in the Tenth Circuit and other courts. Consequently, I will spend some time considering the relevant analysis to apply in such jurisdictional disputes before turning to the questions at hand.

A. *Jurisdictional Framework for Bankruptcy Proceedings*

Federal courts have limited jurisdiction, and a party asserting jurisdiction bears the burden of overcoming the presumption that it is lacking. *See Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). Because bankruptcy courts are a product of Congress, their jurisdiction is restricted to that granted to them by Congress, subject to constitutional limitations. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995); *Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1517 (10th Cir. 1990).

The trend in recent decades has been toward a restrictive understanding of bankruptcy jurisdiction. Not long after Congress enacted the Bankruptcy Act of 1978, which established bankruptcy courts as adjuncts to each district court, *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 53 (1982) (plurality opinion) (citation omitted), the Supreme Court struck down the act's jurisdictional provisions as an unconstitutional vesting of judicial power in a non-Article III body, *id.* at 87. In response, Congress subsequently enacted a more limited grant of jurisdiction to bankruptcy courts that statutorily enshrined "a contraction in the authority of bankruptcy judges." *See Celotex*, 514 U.S. at 329 (Stevens, J., dissenting). The Court continues to recognize the limited nature of bankruptcy court jurisdiction, particularly with respect to disputes that may be adjudicated in other venues. *See Stern v. Marshall*, --- U.S. ---, 131 S. Ct. 2594, 2611 (2011) (recognizing that a bankruptcy court unconstitutionally invokes Article III power when entering final judgment on a state common law counterclaim).

Under the current statutory scheme, bankruptcy court jurisdiction exists over three kinds of proceedings – those "arising under" Title 11 of the United States Code, those "arising in" a case under Title 11, and those "related to" a case under Title 11. *See* 28 U.S.C. § 1334(b). Proceedings "arising under" or "arising in" a case under Title 11 have no existence outside of

bankruptcy, and as such they are referred to as "core" proceedings. *In re Gardner*, 913 F.2d at 1517-18 (citing 28 U.S.C. § 157(b)(1)). Although the terms "arising under" and "arising in" are not clearly defined, Congress has provided a non-exhaustive list of core proceedings, including matters concerning the administration of the estate, allowance or disallowance of claims against the estate, objections to discharges, and confirmation of plans, among others. 28 U.S.C. § 157(b)(1). If an action does not depend on bankruptcy laws for its existence and could proceed in another court, it is not a core proceeding. *In re Gardner*, 913 F.2d at 1518 (citation omitted).

Bankruptcy courts also have jurisdiction over proceedings "related to" bankruptcy cases, sometimes referred to as "non-core" proceedings. 28 U.S.C. § 1334(b); *see also id.* § 157(b)(1). "Related proceedings are civil proceedings that, in the absence of a bankruptcy petition, could have been brought in a district court or state court." *In re Gardner*, 913 F.2d at 1518. This is a significantly broader class of proceedings than core matters, a reflection of Congress's intent "to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex*, 514 U.S. at 308 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

That said, "a bankruptcy court's 'related to' jurisdiction cannot be limitless." *Id.* (citing *Pacor*, 743 F.2d at 994). "For subject matter jurisdiction to exist, there must be some nexus between the 'related' civil proceeding and the [T]itle 11 case." *Pacor*, 743 F.2d at 994 (citation omitted). As such, at least one ruling out of the District of New Mexico has previously recognized that related-to jurisdiction "is primarily intended to encompass tort, contract, and other legal claims by and against a debtor." *Samson Res. Co. v. Valero Mktg. & Supply Co.*, 449 B.R. 120, 127 (D.N.M. 2011) (quoting *Zerand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159, 161 (7th Cir. 1994)); *see also In re Shenango Grp., Inc.*, 501 F.3d 338, 344 (3d Cir. 2007) (recognizing

that while bankruptcy jurisdiction may not exist over a post-confirmation malpractice action brought by a non-debtor, such jurisdiction may exist where the debtor is a party to the action).

Although the question of whether a proceeding is "core" is useful for determining how a bankruptcy judge may handle the matters before him, *compare* 28 U.S.C. § 157(b), *with id.* § 157(c), it is wholly separate from the question as to whether subject matter jurisdiction exists. *See Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 163 (3d Cir. 2004) (citation omitted). Here, Scarborough argues that his claims constitute both core and non-core questions, whereas AFRO and AAFPO assert that his claims are not even "related to" a bankruptcy case, much less "arising under" or "arising in" a bankruptcy case. Because related-to jurisdiction is the broadest category of bankruptcy jurisdiction, I only need to determine whether Scarborough's action is at least related to the Lead Bankruptcy. *See id.* (limiting the question of subject matter jurisdiction to the existence of related-to jurisdiction in the post-confirmation context). If so, jurisdiction over the Scarborough proceeding existed in the bankruptcy court; if not, jurisdiction could not have existed. *See id.*

   B.   *Authority on Post-Confirmation Related-To Jurisdiction*

In *Pacor*, the Third Circuit devised the general standard for determining whether a proceeding is related to a bankruptcy case under 28 U.S.C. §§ 1334(b) and 157(b):

> The usual articulation of the test . . . is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate. On the other hand, the mere fact that there may be common issues between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of [related-to jurisdiction].

*Pacor*, 743 F.2d at 994 (internal citations omitted). The Tenth Circuit and many other appellate courts have adopted this "conceivable effects" formulation. *See In re Gardner*, 913 F.2d at 1518; *see also Celotex*, 514 U.S. at 308 n.6 (noting the adoption of this standard or slight variations thereof by nine circuits).

However, it is virtually impossible to apply the *Pacor* test literally once a Chapter 11 plan has been confirmed, as there is no longer any estate to be affected. *See In re Resorts Int'l*, 372 F.3d at 165 (citation omitted); *see also* 28 U.S.C. § 1141(b) (vesting the property of a bankruptcy estate in the debtor after plan confirmation in most circumstances), *In re Gardner*, 913 F.2d at 1518 ("When property leaves the bankruptcy estate . . . the bankruptcy court's jurisdiction typically lapses, and the property's relationship to the bankruptcy proceeding comes to an end."). Still, the statutory basis for related-to jurisdiction does not end simply because a plan has been confirmed. *Santander Consumer, USA, Inc. v. Houlik (In re Houlik)*, 481 B.R. 661, 675 (B.A.P. 10th Cir. 2012) (construing 28 U.S.C. §§ 1334, 157).[5] To compensate for this potential disparity, most courts recognize the general rule that while related-to jurisdiction may still exist in disputes brought post-confirmation, such jurisdiction "narrows to some extent." *Id.*

_____

[5] That said, there is authority from outside this circuit supporting the proposition that jurisdiction can *never* exist over *any* proceeding brought under a closed bankruptcy case, regardless of whether the matter would otherwise be considered "core" or "related," unless the bankruptcy court has reopened the case under 11 U.S.C. § 350(b). *See, e.g., Iannini v. Winnecour*, 487 B.R. 434, 438-39 & n.7 (W.D. Pa. 2012) (quoting *Walnut Assocs. v. Saidel*, 164 B.R. 487, 491 (E.D. Pa. 1994)). There is no indication in the record before me that the court below reopened this case; indeed, the bankruptcy court expressly stated that the Lead Bankruptcy was closed in its order dismissing the Scarborough proceeding. *In re Angel Fire Corp.*, 2012 WL 5880675, at *10. However, this argument is not raised by the parties or addressed by the court below, there are no statutes on point, and the Tenth Circuit has suggested that jurisdiction may exist over some adversary proceedings within a closed bankruptcy case. *See Johnson v. Smith (In re Johnson)*, 575 F.3d 1079, 1084 (10th Cir. 2009) ("[T]here is no explicit requirement that a 'case' be open under [28 U.S.C.] § 1334(a) for a court to act in a 'civil proceeding' under § 1334(b). . . . And when Congress listed the effects of dismissing a bankruptcy case, it included nothing about automatically terminating the court's jurisdiction over all adversary proceedings . . . ." (internal quotation marks and citations omitted)). I will therefore proceed to consider the jurisdictional question raised in the briefs.

The question, then, is to what extent jurisdiction is narrowed. Because the Tenth Circuit has not developed a supplemental test for post-confirmation related-to jurisdiction, *see id.*, I will review the approaches adopted by other jurisdictions before proceeding to the resolution of the instant matter.

       i.      <u>Approaches in Other Jurisdictions</u>

The Third Circuit, building on the "conceivable effects" test it set forth in *Pacor*, has held that related-to jurisdiction does not disappear post-confirmation if a claim has a "close nexus" to the bankruptcy plan or proceeding. *In re Resorts Int'l*, 372 F.3d at 166-67. Under this test, at least in some contexts, "[m]atters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *Id.* at 167. The goal of the "close nexus" test is to preserve jurisdiction over claims that "affect an integral aspect of the bankruptcy process" without "rais[ing] the specter of 'unending jurisdiction'" over every claim with a remote connection to the bankruptcy. *See id.*

Appellate courts in several other circuits have adopted variations of the "close nexus" test for post-confirmation related-to jurisdiction. *See Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831, 836-37 (4th Cir. 2007) (denying bankruptcy court jurisdiction over a post-confirmation action calling for plan interpretation when doing so would serve "no conceivable bankruptcy administration purpose"); *In re Thickstun Bros.*, 344 B.R. at 521-22 (finding post-confirmation bankruptcy court jurisdiction over interpretation of a plan's treatment of pre-petition claims); *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1194 (9th Cir. 2005) (finding related-to bankruptcy jurisdiction where parties alleged breach of the plan and fraud in the inducement when the plan was confirmed); *see also Cal. Franchise Tax Bd. v. Wilshire Courtyard (In re Wilshire Courtyard)*, 459 B.R. 416, 428-30 (B.A.P. 9th Cir. 2011) (citations

18

omitted) (construing the close-nexus test as more stringent than the Third Circuit's plain language might suggest); *cf. Ace Am. Ins. Co. v. State of Mich. Workers' Comp. Ins. Agency (In re DPH Holdings Corp.)*, 448 F. App'x 134, 137 (2d Cir. 2011) (unpublished) (citations omitted) (determining that a contract-based adversary proceeding constituted a core matter while recognizing that the action also met the close-nexus test).

Not every circuit has adopted the close-nexus test. Notably, the Fifth Circuit has adopted an even narrower test of post-confirmation related-to jurisdiction, relying on a three-factor analysis: (1) whether the claims deal principally with pre-confirmation relations between the parties, (2) whether any antagonism existed between the parties at the date of reorganization, and (3) whether facts or law deriving from the reorganization or the plan are necessary to the claim. *See Newby v. Enron Corp. (In re Enron Corp. Sec.)*, 535 F.3d 325, 335 (5th Cir. 2008). When dealing with "post-confirmation claims based on post-confirmation activities," the test is narrower still, limiting jurisdiction only to matters related to the implementation or execution of the plan. *Id.* (citing *Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390 (5th Cir. 2001)). Conversely, the First Circuit has adopted a broader test, but only as applied to liquidating plans. *See Boston Reg'l Med. Ctr., Inc. v. Reynolds (In re Boston Reg'l Med. Ctr., Inc.)*, 410 F.3d 100, 107 (1st Cir. 2005) (finding that any post-confirmation action involving a liquidating debtor relates directly to a proceeding under Title 11).

ii.   Tenth Circuit Authority

Although the Tenth Circuit has not announced a separate test for post-confirmation related-to jurisdiction, a few guideposts exist for such circumstances. In a case predating all of the aforementioned post-confirmation cases, the court held that related-to jurisdiction existed over a post-confirmation action by the U.S. Trustee seeking fees provided for by statute, since

the action could affect creditors' recovery under the confirmed plan. *U.S. Trustee v. CF & I Fabricators of Utah, Inc. (In re CF & I Fabricators of Utah, Inc.)*, 150 F.3d 1233, 1237 (10th Cir. 1998). In doing so, the court rejected the argument that a statute covering plan implementation and execution limits post-confirmation jurisdiction only to those matters, thereby implicitly recognizing that post-confirmation related-to jurisdiction generally may exist over other actions. *Id.* (construing 11 U.S.C. § 1142(b)). Another Tenth Circuit case summarily recognized that a debtor's claim of fraud involving a plan-created trust was at least "related to" the bankruptcy proceeding post-confirmation. *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1171 (10th Cir. 2000). However, in an unpublished opinion a year later, the Tenth Circuit approved of a district court's "strict" interpretation of post-confirmation related-to jurisdiction in which the lower court considered "the proceeding's practical effect on implementation of the confirmed reorganization plan." *Peterson v. FTC (In re Peterson)*, 6 F. App'x 837, 839 (10th Cir. 2001) (unpublished).

Several months ago, the Tenth Circuit's B.A.P. rejected bankruptcy court jurisdiction over a post-confirmation action brought by debtors against a creditor's agent for wrongfully repossessing their vehicle after the confirmed plan had revested the vehicle in the debtors. *In re Houlik*, 481 B.R. at 672-77. While refusing to expressly adopt either "the Third Circuit's close nexus test or a narrower standard," the panel observed that the action "affect[ed] neither an integral aspect of the bankruptcy process, nor the interpretation, implementation, consummation, execution, or administration of the confirmed plan." *Id.* at 676. Post-confirmation jurisdiction "is reserved for matters that impact the bankruptcy process directly or involve interpretation or execution of the plan of reorganization," the panel noted, and the action in question did not meet that standard. *Id.* at 677.

20

B.A.P. rulings, like unpublished orders, are not binding on this Court. Nonetheless, these persuasive cases interact with existing Tenth Circuit caselaw on related-to jurisdiction to suggest some broad parameters in the post-confirmation context. First, post-confirmation related-to jurisdiction is not simply limited to the actual implementation or execution of a confirmed plan, *see In re CF & I Fabricators*, 150 F.3d at 1237, and as such a literal application of the *Pacor* conceivable-effects test is inadequate. Second, such jurisdiction is nonetheless narrower than that applied in the pre-confirmation context. *See In re Houlik*, 481 B.R. at 676-77; *In re Peterson*, 6 F. App'x at 839. Third, the appropriate standard is no broader than the close-nexus test. *See In re Houlik*, 481 B.R. at 676-77. Fourth, whatever standard is used, a post-confirmation action that "sufficiently affects creditors' recoveries under a plan of reorganization," *In re CF & I Fabricators*, 150 F.3d at 1237, and a debtor's fraud action that involves a bankruptcy trust, *Plotner*, 224 F.3d at 1171, each trigger bankruptcy court jurisdiction.

Given these parameters, I conclude that the Tenth Circuit and its B.A.P. have effectively applied the close-nexus test to the few post-confirmation disputes that have comes to their attention. While the B.A.P. only applied the close-nexus test as the broader of two potential standards in *In re Houlik*, its choice to do so supports the conclusion that a straightforward application of the conceivable-effects test is not warranted in a post-confirmation dispute. *See* 481 B.R. at 676-77. Further, the close-nexus standard clearly encompasses the exercise of post-confirmation jurisdiction over an action that demonstrably affects creditor recovery, *see In re CF & I Fabricators* 150 F.3d at 1237, or a debtor's action that involves a bankruptcy trust, *see Plotner*, 224 F.3d at 1171. It is also consistent with a denial of bankruptcy jurisdiction over claims that are "simply too remote" from the reorganization plan. *See In re Peterson*, 6 F. App'x

at 839. Accordingly, I will apply the close-nexus test to determine whether Scarborough's claims support bankruptcy court jurisdiction.

    iii.    <u>Defining the Close-Nexus Test</u>

An application of the close-nexus test, however, is not as simple as merely turning to the Third Circuit's language and comparing it to the facts before the Court. It is true that the court expressly stated that actions seeking interpretation of a Chapter 11 plan "will typically have the requisite close nexus" to the bankruptcy case. *See In re Resorts Int'l*, 372 F.3d at 161. That said, even the Third Circuit has applied the close-nexus test in a narrower manner than its language might suggest. *See In re Wilshire Courtyard*, 459 B.R. at 428-30 (citing 372 F.3d at 168-69). For example, the opinion in *In re Resorts International* approvingly referred to the denial of jurisdiction in a dispute between a bankruptcy-created trust and non-parties to the bankruptcy; even though resolution of the action "would require more than merely interpreting the plan's terms," it would have "no impact on any integral aspect of the bankruptcy plan or proceeding." 372 F.3d at 168 (citing *Falise v. Am. Tobacco Co.*, 241 B.R. 48 (E.D.N.Y. 1999)). In recent months, the Third Circuit has continued to recognize that the key question under the close-nexus test is "whether the action could conceivably affect the implementation of the confirmed plan." *Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. Withumsmith Brown, P.C.*, 692 F.3d 283, 294 (3d Cir. 2012) (citations omitted).

Reviewing the Third Circuit's treatment of relevant cases, the Ninth Circuit B.A.P. observed that "it is clear that the *Resorts Int'l* court did not intend that a need for plan interpretation support post-confirmation jurisdiction in all cases, but only in those where the results of plan interpretation would have a demonstrable impact on the debtor or confirmed plan of reorganization." *In re Wilshire Courtyard*, 459 B.R. at 428 (citations omitted). The panel thus

concluded that related-to jurisdiction requires "a close nexus connecting a proposed post-confirmation proceeding in the bankruptcy court with some demonstrable effect on the debtor or the plan of reorganization." *Id.* at 430.

Such a holding is consistent with the Tenth Circuit's unpublished decision focusing on "[a] proceeding's practical effect" on a confirmed plan. *See In re Peterson*, 6 F. App'x at 839. Further, a survey of other courts who have applied the close-nexus test in the wake of *In re Resorts International* suggests that the Ninth Circuit B.A.P. has properly interpreted the scope of the close-nexus plan.

For example, the Ninth Circuit itself recognized post-confirmation bankruptcy jurisdiction over an action alleging breach and fraud in the inducement of the plan, a situation that demonstrably impacts the plan itself. *In re Pegasus Gold*, 394 F.3d at 1194; *cf. Sea Hawk Seafoods, Inc. v. Alaska (In re Valdez Fisheries Dev. Ass'n, Inc.)*, 439 F.3d 545, 547 (9th Cir. 2006) (refusing to reopen a bankruptcy case and interpret a settlement agreement between two creditors where doing so "could not conceivably alter the debtor's rights, liabilities, options, or freedom of action or in any way impact upon the handling and administration of the bankrupt estate").

The Fourth Circuit, in turn, refused to find bankruptcy jurisdiction over a post-confirmation tort action between a debtor and a creditor. *Valley Historic Ltd. P'ship*, 486 F.3d at 836-37. Although that matter might have affected the interpretation or implementation of the confirmed plan, which would "typically" imply a close nexus to the bankruptcy case, the court found "no conceivable bankruptcy administration purpose" would be served by the action since the debtor had already paid its creditors and the plan had been consummated. *Id.* at 837 (citing *In re Resorts Int'l*, 372 F.3d at 167).

Finally, while the Sixth Circuit B.A.P. found bankruptcy jurisdiction over an action seeking plan interpretation, such interpretation was relevant to a separate state-court action involving claims that had been asserted pre-petition, not claims that arose post-petition or post-confirmation, and that were expressly cited in the plan provisions in question. *See In re Thickstun Bros.*, 344 B.R. at 517-19, 522. Accordingly, the state law claims already constituted an "integral aspect of the bankruptcy process" at the time of plan confirmation, *see In re Resorts Int'l*, 372 F.3d at 167, and therefore a determination of how to proceed with those claims would demonstrably impact the plan itself.

Thus, the understanding that a close nexus to the underlying bankruptcy case requires a demonstrable impact on that case or its confirmed plan is consistent with the Tenth Circuit's limited caselaw on post-confirmation jurisdiction, the Third Circuit's explication of the close-nexus test, and the application of the test by that circuit and other adopting courts. More importantly, this understanding is consistent with the narrow jurisdiction established by Congress and recognized by the Supreme Court. Although the post-*Northern Pipeline* revisions to bankruptcy jurisdictional statutes evidenced congressional intent "to grant comprehensive jurisdiction to the bankruptcy courts" to handle "all matters connected with the bankruptcy estate," these statutes represented a significant narrowing of such jurisdiction (as compared to the 1978 statutes) and a recognition that bankruptcy court authority must be appropriately limited. *Celotex*, 514 U.S. at 308 (quoting *Pacor*, 743 F.2d at 994); *see also id.* at 329 (Stevens, J., dissenting). As the Court succinctly observed, the critical component of any test for related-to jurisdiction is that "bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor." *Id.* at 306 n.6 (majority opinion). A proceeding that calls for plan interpretation, but that does not have any demonstrable effect on the estate, the debtor, or an

integral aspect of the bankruptcy proceeding itself, is irreconcilable with the jurisdictional limitations imposed on bankruptcy courts by statute and by the Constitution.

As such, I adopt the Ninth Circuit B.A.P.'s definition of the close-nexus test – a bankruptcy court may only exercise post-confirmation related-to jurisdiction over a proceeding if there is a close nexus connecting that proceeding with some demonstrable effect on the debtor or the plan of reorganization in the lead bankruptcy. *See In re Wilshire Courtyard*, 459 B.R. at 428. With the proper test established and defined, I now turn to Scarborough's adversary proceeding and the bankruptcy court's decision below.

### C.  Post-Confirmation Jurisdiction over Scarborough's Claims

Here, the bankruptcy court concluded that it lacked related-to jurisdiction to consider Scarborough's claims, basing this decision in part on the fact that any resolution of the claims "does not impact the estate or case administration because the case is already closed." *In re Angel Fire Corp.*, 2012 WL 5880675, at *11. Although this analysis comports with a literal reading of *Pacor* and *Gardner*, it is not consistent with the Tenth Circuit's treatment of post-confirmation related-to jurisdiction, which has thus far been interpreted more broadly than the conceivable-effects approach would permit. Nonetheless, in light of the foregoing analysis, I am persuaded that this proceeding is not sufficiently related to the Lead Bankruptcy to justify bankruptcy court jurisdiction.

### i.  Application of the Close-Nexus Test to Scarborough's Claim Seeking Plan Interpretation

Scarborough first asserts that jurisdiction exists because he is "seeking interpretation of the scope of the Plan." (Doc. 43 at 25.) Indeed, the Plan itself explicitly reserves bankruptcy court jurisdiction to "[h]ear and determine controversies, suits, and disputes between [Angel Projects I] and any creditor that may arise in connection with interpretation or enforcement of the

plan" (Doc. 13 at 41), and the Final Decree retains bankruptcy jurisdiction "to enforce previous orders and judgments" (Doc. 14 at 41). However, even if those provisions were deemed to be applicable here, they may only be given effect if subject matter jurisdiction already exists for the dispute in question. *See In re Resorts Int'l*, 372 F.3d at 161 ("Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization. . . . If there is no jurisdiction under 28 U.S.C. § 1334 or 28 U.S.C. § 157, retention of jurisdiction provisions in a plan of reorganization . . . are fundamentally irrelevant."). Therefore, the key question remains whether related-to jurisdiction exists under the relevant statutes. *Id.*

The Debtors in the Lead Bankruptcy filed their petition in 1993, and the Plan was confirmed in 1995. The Plan called for the resolution of the property owners' claims by the filing of the Supplemental Declaration. (Doc. 14 at 21.) A Final Decree issued in 2001, officially closing both the Debtors' estate and the Lead Bankruptcy. (*Id.* at 40-41.) The Lead Bankruptcy remains closed at this time. *In re Angel Fire Corp.*, 2012 WL 5880675, at *10. Scarborough filed his amended complaint over ten years later, seeking interpretation of the Plan and the Supplemental Declaration to determine whether the negative easement provided for in those documents impacts three of his properties.

Given the facts and circumstances here, post-confirmation related-to jurisdiction would be inappropriate over Scarborough's request for interpretation of the Plan and Supplemental Declaration. First, as is the case with post-confirmation actions in general, the estate has been fully administered and no longer exists. (Doc. 14 at 40-41; *see also* 11 U.S.C. § 350(a).) Consequently, resolution of the Scarborough proceeding could have no demonstrable effect on

the estate. *See In re Resorts Int'l*, 372 F.3d at 165 (citation omitted); *In re Gardner*, 913 F.2d at 1518.

Second, the Debtors will not be affected by resolution of the Scarborough proceeding since they also no longer exist, another consequence of plan confirmation. (Doc. 14 at 40-41.) Accordingly, jurisdiction in this case would not fulfill the chief purpose of related-to jurisdiction: "to encompass tort, contract, and other legal claims by and against [the] debtor." *Samson Res. Co.*, 449 B.R. at 127 (citation omitted).

Third, there is "no conceivable bankruptcy administration purpose" to Scarborough's action. *See Valley Historic Ltd. P'ship*, 486 F.3d at 837. As the Final Decree noted, the case has been fully administered. (Doc. 14 at 40.) With all property transferred pursuant to the plan, with the assumption by AFRO's predecessor-in-interest of the management of substantially all of the property dealt with by the plan, and with the distribution under the plan having commenced long ago, it would appear that the plan has been substantially consummated. *See id.* § 1101(2); *see also Valley Historic Ltd. P'ship*, 486 F.3d at 837 (finding no related-to jurisdiction where the debtor had already paid its creditors and the confirmed plan had been consummated). The property owners' claims were satisfied by the substantially consummated Plan and the execution of the Supplemental Declaration (*see* Doc. 13 at 21 (discussing the means by which "[t]he Claims of the Property Owners against [the Debtors] shall be satisfied")), and indeed the property owners are "no longer creditors of the bankruptcy estate" at this stage of proceedings, *see In re Shenango Grp.*, 501 F.3d at 344. Consequently, there is no way that this action could affect recovery by the relevant creditors, since there are no longer any creditors whose recovery could be affected. *See CF & I Fabricators*, 150 F.3d at 1237.

Simply put, there is nothing left of the Lead Bankruptcy that requires bankruptcy court administration. These factors lead to the firm conclusion that resolution of Scarborough's action for declarative relief would have "no impact on any integral aspect of the bankruptcy plan or proceeding." *In re Resorts Int'l*, 372 F.3d at 168 (citing *Falise*, 241 B.R. 48).

Finally, policy considerations bolster the conclusion that an exercise of bankruptcy jurisdiction over this proceeding would be inappropriate. As the bankruptcy court noted, a confirmed plan is treated as a contract between the parties, *see* 11 U.S.C. § 1141(a); *In re Shenango Grp.*, 501 F.3d at 344-45; *Lacy v. FDIC (In re Lacy)*, 183 B.R. 890, 892 n.1 (Bankr. D. Colo. 1995), and thus the negative easement filed in the records of Colfax County may be interpreted by reference to state contract and property law principles.[6] Bankruptcy courts are of limited jurisdiction, and adjudication by such a court over matters only tangentially connected to a long-expired bankruptcy case would appear to exceed the established jurisdictional boundaries, even when Plan interpretation is sought. *See In re Resorts In'tl*, 372 F.3d at 170 ("Though the Plan . . . provide[s] the context of the case, this bare factual nexus is insufficient to confer bankruptcy jurisdiction.").

As I observed at the outset, this matter is essentially a real property dispute. Although Congress has provided for bankruptcy jurisdiction over such claims in some circumstances, those circumstances are not without limits. Briefly stated, an exercise of post-confirmation related-to bankruptcy jurisdiction over a property dispute among non-debtors, over interpretive matters not integral to bankruptcy administration, brought almost twenty years after the Debtors filed for bankruptcy and almost twelve years after the final decree in the Lead Bankruptcy, "raise[s] the

---

[6] Indeed, the Plan and Supplemental Declaration have already been subject to interpretation by a state court in a separate case. *See Home & Land Owners, Inc.*, 69 P.3d at 249-50.

specter of 'unending jurisdiction'" that the close-nexus test and other related-to jurisdiction standards were designed to avoid. *Id.* at 167.

Although the Scarborough proceeding calls for interpretation of the Plan and Supplemental Declaration, resolution of the matter would not have any demonstrable effect on the Debtors' estate, the Debtors themselves, or any integral aspect of the Lead Bankruptcy. An exercise of bankruptcy court jurisdiction over the claims would therefore be inappropriate and would exceed the limitations established by Congress and suggested by the relevant caselaw. The bankruptcy court did not err in reaching the same conclusion.

 ii.  <u>Scarborough's Remaining Arguments for Jurisdiction</u>

Aside from questions of plan interpretation, Scarborough also points to other allegations in his complaint that he believes vest the bankruptcy court with jurisdiction over his claims. Having already established that post-confirmation related-to jurisdiction does not exist in this action simply because of the need to interpret the Plan and Supplemental Declaration, I find that these additional allegations do not significantly alter this calculus.

Scarborough first argues that bankruptcy jurisdiction exists over his claims because the "POC is a party to the Supplemental Declaration" and the POC itself arose in the bankruptcy process. (Doc. 43 at 25-26; *see also* Doc. 47 at 5.) Other than a conclusory statement that arising-in jurisdiction" exists pursuant to *In re CF & I Fabricators*, *In re Houlik*, and a Third Circuit case, Scarborough provides no authority for the proposition that a representative negotiating body's participation in a bankruptcy case by itself triggers ongoing bankruptcy court jurisdiction over the matters that they are involved in negotiating simply because the body was created during the bankruptcy process. (*See* Doc. 43 at 25-26.) To the contrary, the Third Circuit in *In re Resorts International* approvingly cited a denial of jurisdiction in a case "involv[ing] a dispute

between tobacco manufacturers and *a trust created as a result of the bankruptcy*," noting that the key factor was that the dispute would not have impacted any integral aspect of the bankruptcy proceeding or plan. 372 F.3d at 168 (citing *Falise*, 241 B.R. 48) (emphasis added). Without more, the POC's involvement in the formulation of the Plan and Supplemental Declaration does not alone justify an exercise of bankruptcy jurisdiction in this matter.

Similarly, Scarborough contends that bankruptcy jurisdiction should exist because the POC may be seen as analogous to a bankruptcy litigation trust. (Doc. 43 at 26-27.) Without commenting on the appropriateness of the analogy, I note again that even the involvement of a trust created as part of a bankruptcy proceeding cannot itself create post-confirmation related-to jurisdiction in an action if, as here, the requisite close nexus to the underlying bankruptcy case is not otherwise present. *See In re Resorts Int'l*, 372 F.3d at 168 (citing *Falise*, 241 B.R. 48).

Scarborough also claims that bankruptcy court jurisdiction exists here because the bankruptcy court lacked personal jurisdiction over him in the POC proceeding, the POC and AAFPO lacked authority to bind him to the outcome of the proceeding, and he was thus denied due process in that proceeding with respect to the lots in question. (Doc. 43 at 27-30.) Of course, merely pleading that due process was denied does not satisfy Scarborough's burden of establishing that bankruptcy court jurisdiction exists. *See Shieldalloy Metallurgical Corp. v. N.J. Dep't of Envtl. Prot.*, 743 F. Supp. 2d 429, 442 (D.N.J. 2010) ("Artful pleading cannot confer subject matter jurisdiction on a court."); *Montoya*, 296 F.3d at 955 (stating that the party asserting jurisdiction bears the burden of establishing jurisdiction). However, without addressing the merits of Scarborough's argument, I observe that the Plan and Supplemental Declaration emerged from the Lead Bankruptcy itself rather than the POC proceeding, and that their execution and recording in the real property records of Colfax County were undertaken pursuant

to directives in the Lead Bankruptcy. (*See* Doc. 13 at 21, 78-91.) Although the bankruptcy court in the POC proceeding recognized that the proceeding's disputes had been resolved pursuant to the Plan and Supplemental Declaration (Doc. 39 at 141), those documents and their execution were not themselves a product of the POC proceeding. Accordingly, even if Scarborough is correct that he was denied due process in the POC proceeding, the argument has no impact on whether bankruptcy court jurisdiction exists here, as the documents were not devised or recorded pursuant to the POC proceeding.

Finally, Scarborough suggests that bankruptcy court jurisdiction exists here to determine "whether claims [existed] against owners of the Lots at the time of the filing of the Lead Bankruptcy." (Doc. 43 at 30.) This determination is essentially a reframing of the question of whether the Plan and Supplemental Declaration apply to the lots in question, a matter that Scarborough correctly recognizes (*see id.* at 31) as the same question of interpretation that was discussed at length above. Because subject matter jurisdiction did not exist over the interpretation of the Plan and Supplemental Declaration in this instance, Scarborough's artful rephrasing of the question does not independently change my analysis.

### CONCLUSION

Scarborough's claims do not possess a sufficiently close nexus to the Lead Bankruptcy to justify bankruptcy court jurisdiction. "That is, of course, not to say that there is no remedy for [Scarborough] in this situation—only that it is a state court remedy and not a bankruptcy court remedy." *See In re Houlik*, 481 B.R. at 676; *see also Home & Land Owners, Inc.*, 69 P.3d at 249-50 (interpreting the Plan and Supplemental Declaration in an unrelated matter). Neither the bankruptcy court's decision nor this recommendation should be interpreted as precluding

Scarborough from pursuing the relief he seeks in another court. Should he choose to do so, perhaps he will find the results more favorable.

For the aforementioned reasons, I agree with the bankruptcy court's determination that it lacked subject matter jurisdiction over the Scarborough proceeding and that the action should be dismissed. I therefore recommend that the bankruptcy court's findings and decision be affirmed and that this appeal be dismissed.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

---

William P. Lynch
United States Magistrate Judge

A true copy of this document was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.